# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

| | |
|---|---|
| **ALBERT MAGEE** | **CIVIL ACTION NO. 16-123-P** |
| **VERSUS** | **JUDGE FOOTE** |
| **JOELL WILLIAMS, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

### REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

### STATEMENT OF CLAIM

Before the court is a civil rights complaint filed in forma pauperis by pro se plaintiff Albert Magee ("Plaintiff"), pursuant to 42 U.S.C. § 1983. This complaint was received and filed in this court on January 26, 2016. Plaintiff is currently incarcerated at the Bossier Parish Minimum Security Facility in Plain Dealing, Louisiana, but claims his civil rights were violated by prison officials while incarcerated at the David Wade Correctional Center in Homer, Louisiana. He names Joell Williams, Warden Rashal, Head Nurse Meshall Norris, CRL Neil, Dr. Fuller, and Nurse Bill as defendants.

Plaintiff claims he was housed in lock-down from June 28, 2015 until November 24, 2015. He claims Nurse Joell Williams retaliated against him when he picked up his sick calls and did not deliver them to the doctor. He claims Nurse Williams knew his problems were life threatening. Plaintiff claims Nurse Bill and Nurse Meshall Norris also withheld his sick call requests from the doctor.

Plaintiff claims he is HIV positive, but has not regularly seen a doctor about his virus load. He claims he has been denied a physical for syphilis and hepatitis. He claims his STD's are interfering with his HIV treatment. He claims these conditions are life threatening if not treated properly and timely. He claims the staff knew of his serious conditions and that if they withheld treatment he would eventually die.

Plaintiff claims that on August 3, 2015, he made a sick call because he had discharge and abdominal pains. He claims Nurse Williams falsely alleged that he did not cooperate with the examination. Plaintiff claims he then filed a grievance in the administrative remedy procedure. He claims his situation worsened after he filed the grievance.

Plaintiff claims he went to the chronic call out twice to have his vital signs checked. He claims that at one visit, he asked Nurse Williams if he could speak with Dr. Hearn. He claims Nurse Williams told him that he would never speak with Dr. Hearn.

Plaintiff claims that on September 3, 2015, he made a sick call and Nurse Williams examined him. He claims he had abdominal and chest pains and discharge from his penis. He claims Nurse Williams denied him medical treatment because he did not refer him to the doctor and/or persuaded Dr. Fuller not to look at his sick call requests.

Plaintiff claims that on September 21, 2015, he made a sick call and Nurse Williams examined him. He claims he had tightening of his chest and an irregular heart rate. He claims Nurse Williams denied him medical treatment because he did not refer him to the doctor.

Plaintiff claims that on September 26, 2015, Nurse Bill was supposed to fill his medication bottles for the following week. He claims he did not receive his medications

on this date.  He claims this was not the only date that he did not receive his medications. He claims he must take this medication daily to keep his immune system active.

Plaintiff claims that on October 19, 2015, he made a sick call and Nurse Williams examined him.  He claims he had discharge from his penis and abdominal and chest pains. He claims he was denied adequate medical treatment because he was not referred to the doctor or prescribed medication.

Plaintiff claims that on October 27, 2015, he made a sick call and was examined by Nurse Williams.  He claims he had discharge from his penis, abdominal pains, and chest pains.  He claims he was denied adequate medical treatment because he was not referred to the doctor or prescribed medication.

Plaintiff claims that on November 10, 2015, Nurse Williams examined him.  He claims his morning medications were not working properly and this was a life threatening situation because of his immune system.  Plaintiff claims he asked Sgt. Marvin to witness his examination because Nurse Williams and Nurse Bill said he was not cooperating with the examination.

Plaintiff claims that on November 12, 2015, Nurse Hamilton placed him on vital signs watch because of his pain.

Plaintiff claims that on December 28, 2015, he made a sick call request.  He claims Nurse Hamilton examined him while Nurse Norris watched.  He claims Nurse Hamilton collected a urine sample from him.  He claims Nurse Hamilton recommended that he be referred to the doctor.  Plaintiff claims Nurse Norris may have moved his sick call so that a doctor would not see it.

Plaintiff claims that on January 27, 2016, he made a sick call and was examined by Nurse Jeff Harris. He claims he told Nurse Harris that he had a burning sensation in his veins and chest and abdominal pains.

Plaintiff claims Dr. Fuller saw him approximately two weeks later. He claims he asked Dr. Fuller to double his food portions because he had lost 19 pounds. He claims he told Dr. Fuller that he was taking aspirin for the burning sensation in his veins but that he needed a stronger medication. He claims Dr. Fuller gave him 800 mg of Ibuprofen. He claims the medication did not help and he stopped taking it after a week. He claims Dr. Fuller refused to give him a stronger medication and dismissed him from his office.

Plaintiff claims that in February of 2016, he was examined by a doctor outside the facility and diagnosed with chlamydia. He claims he has had herpes for the past six years but did not test positive for it. He claims the doctor prescribed penicillin for his condition. He claims his digestive system is not working properly and he has a burning sensation throughout his body. Plaintiff claims that his HIV medication was not changed. He claims he waited almost a year to get his virus load tested from May 2015 until February 2016.

Plaintiff claims that on March 7, 2016, Nurse Norris examined him. He claims he told Nurse Norris that his medication was ineffective and he was in pain. He claims she told him that he saw an outside doctor and there was nothing else that could be done for him.

Plaintiff claims that on March 31, 2016, Nurse Norris examined him. He claims he told her that his medication was ineffective and he had a burning sensation in his veins. He claims he also told her that he could not keep food down and he was losing weight. He

claims Nurse Norris threatened to write him up for malingering if he made another sick call.  He claims Ms. Poole asked him if he had a mental health problem.  Plaintiff claims his mental health has nothing to do with the pain he was experiencing.

Plaintiff claims that on April 28, 2016, Nurse Norris saw him for sick call because he had a fever.  He claims his immune system was not working properly because he had a cold for three weeks.  He claims she did not take his weight as part of his examination.  He claims Nurse Norris recorded that he did not have a runny nose, cough, or fever.  He claims that he had all of these symptoms and was so weak that he could not go to work call.  He claims she did not give him a duty status because he had filed grievances in the administrative remedy procedure.  He claims he was written up for not going to work call out.

Plaintiff claims that on May 8, 2016, he went to the chronic call out.  He claims Nurse Hamilton and Nurse Jeff do everything correctly and do not change his numbers. He claims his weight was down almost four pounds.  He claims the doctors do not think that his weight is unhealthy.

Plaintiff claims he is still on the waiting list to see an outside doctor regarding his medications.  Plaintiff claims his HIV medications are not working properly because he is experiencing side effects.  He claims he has a burning sensation in his veins and upper right chest.  He claims he has shortness of breath and constant bowel movements.  He claims the medication has shrunk his stomach so he is eating less food.  He claims he also has fevers.

Plaintiff claims the delay in receiving medical treatment is causing long term damage. He claims he is weak and has abdominal and chest pains. He also claims he has sharp pains in his entire body.

Plaintiff claims CRL Neil and Warden Rashal knew of the situation and ignored it. He claims he wrote letters to CRL Neil and Warden Rashal informing them of the retaliation. He claims CRL Neil and Warden Rashal never looked into his complaints.

Accordingly, Plaintiff seeks medical treatment, a transfer to another facility, and compensatory and punitive damages.

## LAW AND ANALYSIS

### Medical Care

As detailed above, Plaintiff claims he was denied proper treatment for his medical conditions which include HIV, STD's, and hepatitis. He claims he was not referred to a doctor or prescribed medications. He claims his medications were not changed. He also claims that he was not given his medications on September 26, 2015. Plaintiff claims the delay in medical treatment including changing his medications can cause his conditions to worsen.

Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities" by a person acting under color of state law. The particular right protected under 42 U.S.C. § 1983 in matters which concern alleged denial of or inadequate medical care is the Eighth Amendment prohibition against cruel and unusual punishment.

The lack of proper inmate medical care rises to the level of a constitutional deprivation under the Eighth Amendment of the United States Constitution only if the evidence shows that the prison officials showed "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976); See also Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978 (1994).   It is only deliberate indifference, "an unnecessary and wanton infliction of pain" or an act "repugnant to the conscience of mankind," that constitutes conduct proscribed by the Eighth Amendment. Estelle, 429 U.S. at 105-06, 97 S. Ct. at 292; See also Gregg v. Georgia, 428 U.S. 153, 96 S. Ct. 2909 (1976).   Further, the plaintiff must establish that the defendants possessed a culpable state of mind.   See Wilson v. Seiter, 501 U.S. 294, 297-302, 111 S. Ct. 2321, 2323-27 (1991); Farmer, 511 U.S. at 838-47, 114 S. Ct. at 1979-84.   A delay in medical care will violate the Eight Amendment only if the delay is based on deliberate indifference and results in substantial harm.   Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). In addition, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

In this case, after a thorough review of Plaintiff's complaint, read in a light most favorable to him, the court finds that the facts alleged do not support a finding of deliberate indifference to serious medical needs.   To the contrary, the record demonstrates that Defendants were attentive to the medical needs of Plaintiff.   It has been consistently held that an inmate who has been examined by medical personnel fails to set forth a valid showing of deliberate indifference to serious medical needs.   Norton v. Dimazana, 122

F.2d 286, 292 (5th Cir. 1997); Callaway v. Smith County, 991 F. Supp. 801, 809 (E.D. Tex. 1998); Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).  Plaintiff admits he was examined by a member of the medical staff on August 3, 2015, September 3, 2015, September 21, 2015, October 19, 2015, October 27, 2015, November 10, 2015, December 28, 2015, January 27, 2016, March 7, 2016, March 31, 2016, and April 28, 2016.  He admits his vital signs were checked at the chronic care call out at least three times.  He also admits that on November 12, 2015, Ms. Hamilton placed him on vital signs watch.  Plaintiff admits that at his December 28, 2015 examination, a urine sample was taken and he was referred to the doctor. He admits he was examined by Dr. Fuller in February of 2016 and given medication.  He also admits that in February of 2016, he was examined by a doctor outside the facility and prescribed medication.

Plaintiff's complaint is devoid of factual allegations that would tend to show Defendants acted with a culpable state of mind or that their actions were "unnecessary and wanton."  Plaintiff does not allege how the alleged delay in receiving medical treatment including his mediation for one day and having his viral load checked more often were based on deliberate indifference.

Plaintiff's allegations, if accepted as true, may amount to a state law claim for negligence, a tort.  However, mere negligence, neglect, or medical malpractice does not amount to a denial of a constitutional right as these actions on the part of Defendants do not rise to the level of a constitutional tort.  See Daniels v. Williams, 474 U.S. 327, 329-30, 106 S. Ct. 662, 664 (1986); Estelle, 429 U.S. at 106, 97 S. Ct. at 292; Lewis v. Woods, 848

F.2d 649, 651 (5th Cir. 1988).  The fact that Plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act.  See Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985).  Prisoners are not constitutionally entitled to the best medical care that money can buy. See Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).

Accordingly, Plaintiff's medical care claims should be dismissed with prejudice as frivolous.

**Retaliation**

Plaintiff claims he was retaliated against because he filed a grievance in the administrative remedy procedure.  To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident, such as the withholding of his sick call requests from the doctor, would not have occurred. Woods v. Smith, 60 F.3d 1161 (5th Cir. 1995), citing Mt. Healthy City School Board District Bd. Of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

The retaliatory motive alleged by Plaintiff is entirely conclusory as he provides no specific allegations showing that "but for" this motive his sick call requests were withheld from the doctor.

Accordingly, Plaintiff's retaliation claims should be dismissed with prejudice as frivolous.

**Transfer**

Plaintiff seeks to be transferred to Elyn Hunt Correctional Center for medical treatment.  The United States Supreme Court has held that it is for state prison authorities to decide where a state prisoner is to be incarcerated, and that a prisoner has no right to challenge his place of incarceration.  See Olim v. Wakinekona, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).  Under Olim and Meachum, this court has no authority to order the State to transfer Plaintiff to another prison.

Accordingly, Plaintiff's request for a transfer to another facility should be dismissed with prejudice as frivolous.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed.  See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985).  District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact.  See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

For the reasons heretofore stated, it is recommended that Plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e).

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party.  See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 2nd day of March, 2018.

**Mark L. Hornsby**
**U.S. Magistrate Judge**